UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,<br><br>    Plaintiff,<br><br>vs.<br><br>HIGGINS, *et al.*,<br><br>    Defendants. | Case Nos.: 2:19-cv-00332-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT (Dkt. 82)**<br><br>**DEFENDANTS' RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 84)** |

Before the Court is (i) Plaintiff's Renewed Motion for Summary Judgment (Dkt. 82), and (ii) Defendants' Renewed Cross-Motion for Summary Judgment (Dkt. 84). Having carefully considered the record and participated in oral argument, the Court hereby denies Plaintiff's Motion and grants Defendants' Motion because (i) the doctrine of administrative wavier applies to Plaintiff's challenge to the Hanna Flats Project, and (ii) no exceptions to administrative waiver apply.

I. **BACKGROUND**

On October 11, 2018, Defendant United States Forest Service ("USFS") issued a Decision Memo (the "Initial Decision Memo") authorizing the Hanna Flats Project (the "Project"). The Project is located in Bonner County on the Priest Lake Ranger District of the Idaho Panhandle National Forest. It was designed to reduce the risk or extent of insect or disease infestation and reduce the current and future risk of catastrophic wildfire to people, public and private lands, and infrastructure. The 6,814-acre Project area is dominated by dense, mixed-

**MEMORANDUM DECISION AND ORDER - 1**

conifer forest stands with large amounts of surface, ladder, or canopy fuels.  It authorizes various treatments on 2,352 acres, including timber harvest, prescribed fire, and reforestation.  The Project also authorizes temporary road construction, excavated skid trail construction, and road maintenance.

Relevant here, the USFS issued the Initial Decision Memo under Section 603 of the Healthy Forest Restoration Act ("HFRA"), which exempts qualifying insect and disease projects in wildland-urban interfaces from the requirements of the National Environmental Policy Act ("NEPA").  As a result, no Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") was ever prepared for the Project.

A.   *Hanna Flats I* **and the Initial Decision Memo**

Plaintiff Alliance for the Wild Rockies ("Alliance") challenged the Initial Decision Memo in an earlier proceeding before then-Chief U.S. Magistrate Judge Ronald E. Bush – *Hanna Flats I*.  There, Alliance argued that, in approving the Project via the Initial Decision Memo, the USFS (i) violated the Access Amendments[1] (First, Second, Third, and Sixth Claims for Relief); and (ii) failed to establish that the Project meets the statutory definition of wildland-urban interface, and likewise failed to establish that the Project qualifies for a categorical exclusion (Fourth and Fifth Claims for Relief).  On the parties' cross-motions for summary judgment, Judge Bush preliminarily concluded that Alliance's Access Amendments-related claims could not be resolved as a matter of law, owing to the constantly-evolving record relating to the USFS's and the USFWS's reinitiation/conclusion of Endangered Species Act ("ESA")

---

[1] The Access Amendments are Forest Plan amendments implemented by the USFS and the United States Fish and Wildlife Service ("USFWS") to set standards for motorized use in habitat for the Selkirk and Cabinet-Yaak grizzly bear populations in northwestern Montana and northern Idaho.  The Access Amendments apply mandatory road restrictions to National Forest lands within both the bears' official "Recovery Zones," as well as occupied habitat outside these areas (referred to as "Bears Outside Recovery Zones" or "BORZ" areas).

**MEMORANDUM DECISION AND ORDER - 2**

Section 7 consultations. *All. for the Wild Rockies v. Higgins (Hanna Flats I)*, 535 F. Supp. 3d 957, 963 n.5 (D. Idaho 2021). He in turn denied both motions for summary judgment, without prejudice, as to Alliance's First, Second, Third, and Sixth Claims for Relief. *Id*. at 963-64, 81.[2]

Thus, *Hanna Flats I* substantively addressed only Alliance's wildland-urban interface-related claims. Defendants took the position that, because the Project area had been designated as a wildland-urban interface in the Bonner County Wildfire Protection Plans, the Project met the definition of a wildland-urban interface under HFRA and the Project was therefore categorically excluded from NEPA analysis. Alliance disagreed, claiming that, while there is a categorical exclusion for wildland-urban interfaces, the USFS did not sufficiently prove that to be the case.

After Judge Bush concluded that Alliance had standing and sufficiently exhausted its administrative remedies (other procedural arguments made by Defendants), Judge Bush agreed with Alliance and granted its Motion for Summary Judgment (as to the Fourth Claim for Relief) in this respect. He found that the USFS violated HFRA because it failed to use HFRA's statutory definition of wildland-urban interface and therefore could not claim that the Project was categorically excluded from NEPA compliance. *Id*. at 977-79.[3]

Judge Bush remanded the action to the USFS to revisit its claim that the entire Project is within a wildland-urban interface. *Id*. at 980. He required the USFS to issue a Supplemental Decision Memo that "clearly: (i) states how the wildland-urban interface is defined; (ii) applies

---

[2] Judge Bush allowed Alliance to file a separate action if necessary, based on a more developed and up-to-date record following remand. *Hanna Flats I*, 535 F. Supp. 3d at 963-64 n.6. In doing so, he observed that Alliance's wildland-urban interface-related claims remained and were "a keystone issue of whether the Project was properly categorically excluded from NEPA analysis." *Id.*

[3] Judge Bush separately dismissed Alliance's Fifth Claim for Relief that dealt with whether the Project constituted a "major federal action" under 40 C.F.R. § 1508.18. *Hanna Flats I*, 535 F. Supp. 3d at 979 n.21 ("[I]t cannot be said that Bonner County's Wildfire Plans represent 'federal actions' that require an EA or EIS.").

**MEMORANDUM DECISION AND ORDER - 3**

the wildland-urban interface (using the supplied definition) to a map that concurrently and definitively depicts the Project area; and (iii) explains how the Project area falls within the wildland-urban interface under HFRA." *Id*. at 980-81.  In the meantime, Judge Bush suspended the Project.  *Id*.

**B.**     ***Hanna Flats II* and the Supplemental Decision Memo**

In response to Judge Bush's direction, the USFS issued a Supplemental Decision Memo on May 28, 2021.  Then, on June 1, 2021, the USFS informed Alliance that it had complied with Judge Bush's remand order in *Hanna Flats I* and that it may begin logging under the Project as soon as July 2, 2021.

Alliance challenged the Supplemental Decision Memo in a subsequent action before U.S. District Judge B. Lynn Winmill – *Hanna Flats II*.  There, Alliance argued that the Project remained unlawful under both the Initial Decision Memo and the updated Supplemental Decision Memo.  It alleged that (i) the USFS still failed to demonstrate compliance with the Access Amendments (First Claim for Relief); and (ii) the Supplemental Decision Memo did not comply with Judge Bush's remand order in *Hanna Flats I* and still failed to meet the statutory definition of wildland-urban interface (Second Claim for Relief) regardless.  The next day, Alliance moved for a preliminary injunction and/or temporary restraining order, seeking to maintain the status quo until Judge Winmill could issue a final decision on the merits of the case.

Judge Winmill granted Alliance's motion.  Aided by the *Winter* factors, he concluded that there were "serious questions going to the merits." *All. for the Wild Rockies, v. Pierson (Hanna Flats II)*, 550 F. Supp. 3d 894, 898-904 (D. Idaho 2021).  He observed that the Supplemental Decision Memo did not analyze how the Project satisfied HFRA's definition of wildland-urban interface, improperly relying instead on (i) Bonner County's Community Wildfire Protection Plan that simply said so, and (ii) Bonner County's 2017 Hazard Mitigation

**MEMORANDUM DECISION AND ORDER - 4**

Plan that did not discuss or analyze the Project using HFRA's definitions. *Id.* Further, he noted that the Supplemental Decision Memo failed to apply the proper definition of "at-risk communities" and "within or adjacent to" (component parts of the definition of a wildland-urban interface). *Id.* Accordingly, Judge Winmill found that the balance of equities tipped sharply in Alliance's favor and issued a preliminary injunction. *Id.* at 905-07.[4] The Project was once again suspended until further notice. *Id.* at 907.

C.   **The Ninth Circuit and *Petrick***

Defendants appealed both Judge Bush's summary judgment decision in *Hanna Flats I* and Judge Winmill's preliminary injunction in *Hanna Flats II*. In a single opinion, the Ninth Circuit addressed both appeals. *See Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475 (9th Cir. 2023).

1.   <u>*Hanna Flats I* on Appeal</u>

The only issue resolved on appeal in *Hanna Flats I* was whether Alliance's comments during the Project's scoping phase put the USFS on notice of Alliance's wildland-urban interface concerns.[5] The Ninth Circuit held that they did not:

> Here, Alliance's vague and generalized statement that the district court cites, contained within more than a hundred pages of comments, did not provide sufficient notice to the government of Alliance's current concerns. That comment complains only that the definition of "wildland-urban interface" is vague and allows "entities other than the general public to set [wildland-urban interface] boundaries." This may reflect a broad concern about the size of the wildland-urban interface. And it may even be a

---

[4] In issuing the preliminary injunction, Judge Winmill addressed only Alliance's wildland-urban interface-related claim (Second Claim for Relief). Like Judge Bush in *Hanna Flats I*, Judge Winmill did not address Alliance's Access Amendments-related claim (First Claim for Relief).

[5] The Ninth Circuit confirmed that this issue related to administrative waiver, not administrative exhaustion (as Defendants had previously argued before Judge Bush). *Petrick*, 68 F.4th at 487-89 (such an inquiry "is an element of both exhaustion and waiver, but turns on a principle best characterized as waiver.") (internal quotation marks and citation omitted).

**MEMORANDUM DECISION AND ORDER - 5**

> criticism of HFRA. But it is not a claim that the Forest Service has violated HFRA – the claim raised in court.
>
> . . . .
>
> Alliance did not put the Forest Service on notice about the issue that would provide the basis for Alliance's eventual claim in federal court. The district court erred in concluding otherwise.

*Id*. at 489-90 (internal quotation marks and citation omitted).

As a result, the Ninth Circuit "vacate[d] the grant of summary judgment and remand[ed] for the district court to consider in the first instance whether any such comments [during the scoping phase] were necessary to challenge a project exempted from NEPA analysis by a categorical exclusion. *Id*. at 490. Further, in a footnote, the Ninth Circuit permitted Alliance on remand to "raise other waiver-specific arguments that the district court concludes were reasonably not made previously given the Forest Service's [earlier] framing of the issue as one of exhaustion." *Id*. at 490 n.4.

2. *Hanna Flats II* on Appeal

Among the issues on appeal in *Hanna Flats II*, the USFS argued that its Initial Decision Memo and Supplemental Decision Memo offered a sufficient explanation for the use of the categorical exclusion simply by noting that the Project is within the wildland-urban interface identified by the Bonner County community plan. Critically, the Ninth Circuit disagreed because the Bonner County community plan's definition of "wildland-urban interface" was broader than HFRA's definition, "likely result[ing] in a covered area beyond what Congress authorized." *Id*. at 494. Accordingly, the Ninth Circuit concluded that the Bonner County community plan's asserted wildland-urban interface would not support the use of HFRA's categorical exclusion. *Id.*

**MEMORANDUM DECISION AND ORDER - 6**

Notwithstanding, the Ninth Circuit vacated the preliminary injunction issued by Judge Winmill. *Id.* at 496-98. It held that the grant of preliminary injunction rested on a faulty interpretation of wildland-urban interface that was "belied by HFRA's statutory language." *Id.* at 495. As a result, the Ninth Circuit remanded to the district court to apply the proper legal and statutory standards. *Id*. at 497 n.7.[6]

**D.   Since *Petrick***

*Petrick* was decided on May 16, 2023. Ten days later, the USFS withdrew its May 28, 2021 Supplemental Decision Memo and indicated that its October 11, 2018 Initial Decision Memo remained in effect. Not. (Dkt. 26). Defendants also stated that Project operations could begin the first week of August 2023. *Id*. Thereafter, consistent with *Petrick's* remand directives and the parties' stipulated briefing schedules, Alliance renewed its Motion for Preliminary Injunction and/or Temporary Restraining Order in *Hanna Flats II*, followed by the parties renewed cross-motions for summary judgment in *Hanna Flats I*.[7]

Briefing on Plaintiff's renewed Motion for Preliminary Injunction and/or Temporary Restraining Order in *Hanna Flats II* concluded on July 7, 2023. On July 19, 2023, Judge Winmill held a hearing on the motion, but did not hear substantive argument. Instead, owing to the possible interplay between *Hanna Flats I* and *Hanna Flats II*, Judge Winmill questioned whether a single judge should oversee both cases and, since *Hanna Flats I* was filed first, whether *Hanna Flats II* should be reassigned to the undersigned. Neither party objected to the consolidation of both cases before the same judge and, on July 25, 2023, Judge Winmill entered

---

[6] Like Judge Winmill in *Hanna Flats II*, the Ninth Circuit did not address Alliance's Access Amendments-related claim (First Claim for Relief). *Petrick*, 68 F.4th at 498.

[7] Contemporaneous with Judge Bush's retirement, *Hanna Flats I* was reassigned to the undersigned in June 2021. The parties' renewed cross-motions for summary judgment in *Hanna Flats I* are therefore before the undersigned.

**MEMORANDUM DECISION AND ORDER - 7**

a "Referral Order" that effectively reassigned *Hanna Flats II* to the undersigned. Referral Order (Dkt. 36). The parties ultimately formally consented to the undersigned's jurisdiction.

In the meantime, Project operations were temporarily suspended. But on August 4, 2023, Defendants provided notice that operations on the Thin Lamb Good Neighbor Authority Sale (a timber sale authorized by the Project) were back on again and could start on September 18, 2023, beginning with road work. Not. (Dkt. 37).

Briefing on the parties' cross-motions for summary judgment in *Hanna Flats I* concluded on August 24, 2023. Addressing the two cases' parallel tracks and distinct remands, on September 6, 2023, the Court entered a temporary restraining order in *Hanna Flats II* that suspended the Project until *Hanna Flats I* is resolved and a hearing takes place on *Hanna Flats II*. To that end, on October 3, 2023, the Court held a hearing on the now-at-issue cross-motions for summary judgment in *Hanna Flats I*. The issues presented therein are addressed below.

### III. DISCUSSION

Alliance and Defendants renew their respective motions for summary judgment on Alliance's Fourth Claim for Relief in *Hanna Flats I*, which challenges Defendants' Initial Decision Memo authorizing the Project using a categorical exclusion. To this point, it can be argued that, on the legal merits, Alliance prevails on this claim because the Initial Decision Memo (at play in *Hanna Flats I*), and its reliance upon county community plans to show that the Project is in a wildland-urban interface, do not support a categorical exclusion. Judge Bush said as much and, on appeal, the Ninth Circuit in *Petrick* appeared to agree (albeit when discussed in the context of *Hanna Flats II*). *Supra*.

But that is now secondary since the Ninth Circuit also indicated that Alliance may have waived this claim because it did not sufficiently put the USFS on notice of its concerns surrounding the Project's relationship to a wildland-urban interface – and hence the use of a

**MEMORANDUM DECISION AND ORDER - 8**

categorical exclusion – before filing the *Hanna Flats I* lawsuit. *Id*. Whether waiver applies hinges on whether Alliance was even required to submit such an "administrative objection"[8] or otherwise comment before seeking judicial review relating to the same concerns, given the Project's exemption from NEPA analysis via a claimed categorical exclusion. If waiver applies, the Court considers the application of any exceptions thereto. The Court addresses each issue in turn below.

A.  **Remand Issue No. 1: Whether Administrative Waiver Applies to Alliance's Claim Involving the Wildland-Urban Interface Where the USFS Sought Exemption of the Project from NEPA Analysis by Categorical Exclusion**

Fundamentally, Alliance argues that it could not have waived judicial review of a claim – by failing to provide public comment and notice to the USFS of Alliance's concerns about the Project – if Alliance was never required to provide public comment and notice in the first place. *See* All.'s Mem. ISO MSJ at 8-10 (Dkt. 82-1). Primarily, it relies upon the statutory language of HFRA – specifically, 16 U.S.C. §§ 6515 and 6591b – to make its case that there is no requirement for public comment and notice for projects categorically excluded from NEPA analysis. *Id.* at 9.

To begin, Alliance observes that projects categorically excluded under 16 U.S.C. § 6591b are "exempt from the special administrative review process under section 6515 of this title." *Id.* (citing 16 U.S.C. 6591b(a)(2)). Then, Alliance claims that section 6515 is the exclusive mechanism for challengers to notify the USFS of their objections to hazardous fuel reduction projects: "requirements for public comments and notice of specific issues are thus only required

---

[8] "Administrative objection" is a term proffered by Alliance. However, it does not appear in the statutes or regulations at issue. Alliance does not cite to any formal definition, but rather, uses it interchangeably with "public comment" and "notice." *See* All.'s Mem. ISO MSJ at 8-10 (Dkt. 82-1). Accordingly, the Court herein construes the term "administrative objection" as public comment and notice to the agency.

**MEMORANDUM DECISION AND ORDER - 9**

by statute as part of the special administrative review process in Section 6515" and that "[t]hese requirements are not found elsewhere in the statute." *Id.* (citing 16 U.S.C. § 6515(a)(1): the administrative review process "serves as the sole means by which a person can seek administrative review."). To be eligible to participate in the administrative review process, section 6515 requires that a person submit, "during scoping or the public comment period for the draft environmental analysis for the project, specific written comments that relate to the proposed action." *Id*. at § 6515(a)(3). Section 6515 further provides: "An issue may be considered in the judicial review of an action . . . only if the issue was raised in an administrative review process described in paragraph (1)." *Id*. at § 6515(c)(2).

Taken together, Alliance argues that: (i) because categorically excluded projects are excluded from section 6515's administrative review process; (ii) because section 6515's administrative review process is the sole means for challengers to provide public comment and notice of objections to the USFS; and (iii) because section 6515 requires challengers to raise issues in the administrative review process to preserve them for judicial review; then (iv) administrative waiver does not apply to categorically excluded projects. All.'s Mem. ISO MSJ at 10 (Dkt. 82-1). Without an explicit requirement in a statute or regulation, Alliance says, the Court here cannot impose upon it a non-existent public comment and notice requirement that would otherwise anchor Defendants' argument that Alliance waived its Fourth Claim for Relief. *Id*. (citing *Darby v. Cisneros*, 509 U.S. 137, 154 (1993)).

In response, Defendants acknowledge that projects authorized under HFRA's insect and disease categorical exclusion are exempt from section 6515's administrative review process. Defs.' Mem. ISO MSJ at 2, 14 (Dkt. 84-1). But they insist that public scoping and comment were still absolutely required for categorically excluded projects notwithstanding this exemption. *See id*. at 9 ("Despite Plaintiff's arguments to the contrary, categorical exclusions are not exempt

**MEMORANDUM DECISION AND ORDER - 10**

from the requirement to raise comments before the agency when the opportunity to do so exists.") (internal citation omitted). In support, Defendants cite both HFRA and the USFS regulations. *See id*. at 14 (citing 16 U.S.C. § 6591b(f) ("The Secretary shall conduct public notice and scoping for any project or action proposed in accordance with this section."); 36 C.F.R. § 220.4(e)(1) ("Scoping is required for all Forest Service proposed actions, including those that would appear to be categorically excluded from further analysis and documentation in an EA or an EIS [ ].")). Accordingly, Defendants dispute Alliance's argument that section 6515 is the sole means for challengers to provide public comment and notice of objections to categorically excluded projects, and argue that the doctrine of administrative waiver can still apply to such projects and does apply here.

Moreover, Defendants contest that section 6515 even involves waiver. Rather, they claim that the administrative review process referenced in section 6515 speaks to administrative *exhaustion*, not administrative *waiver*. *Id*. at 2, 14-16. Thus, Defendants maintain that Alliance's reliance on section 6515 improperly conflates the two doctrines, and in doing so, results in "an irrelevant distraction from the real issue." *Id*.

These arguments frame the issue before the Court as whether a challenger must first provide public comment and notice of objections for projects categorically excluded from NEPA analysis before pursuing a related claim on judicial review. More specific to this case, the issue before the Court is whether Alliance waived its Fourth Claim for Relief when – notwithstanding section 6515 – it failed to sufficiently put the USFS on notice of the wildland-urban interface issue. The Court concludes that it did.

To start, the fact that categorically excluded projects are exempt from section 6515's administrative review process is not dispositive, as Alliance urges it to be. In this regard, Alliance's argument rests upon an inverse fallacy. Simply because (i) section 6515 is the sole

**MEMORANDUM DECISION AND ORDER - 11**

means to provide public comment and notice to the USFS for *projects subject to NEPA analysis;* and (ii) *categorically excluded projects* are exempt from section 6515; (iii) the inverse conclusion that there are no means for challengers to provide public comment and notice to the USFS for *categorically excluded projects* does not necessarily follow. Indeed, Defendants' argument – that a public comment and notice requirement for categorically excluded projects derives from some source other than section 6515 – is equally plausible. *See supra* (citing 16 U.S.C. § 6591b(f) and 36 C.F.R. § 220.4(e)(1)).

Moreover, whether section 6515 speaks to waiver – or just exhaustion as Defendants claim – is unsettled. As the Ninth Circuit recognized, the "HFRA is not a model of clarity and contains several interrelated provisions." *Petrick*, 68 F.4th at 495. While it is true that section 6515(c)(2) provides that "[a]n issue may be considered in the judicial review of an action . . . only if the issue was raised in [section 6515's] administrative review process," the remainder of section 6515's regime addresses exhaustion. *See, e.g.*, 16 U.S.C. § 6515(c)(1)(A) ("A person *may bring a civil action* challenging an authorized hazardous fuel reduction project in a Federal district court only if the person has challenged the authorized hazardous fuel reduction project *by exhausting the administrative review process established by the Secretary of Agriculture under this section*[.]") (emphasis added); 16 U.S.C. § 6515(c)(3) ("An exception *to the requirement of exhausting the administrative review process before seeking judicial review* shall be available if a Federal court finds that the futility or inadequacy exception applies to a specific plaintiff or claim.") (emphasis added).[9]

---

[9] Likewise, the USFS regulations characterize section 6515's administrative review process as relating to exhaustion, not waiver. *See, e.g.*, 36 C.F.R. § 218.14(b) ("Any filing for Federal judicial review of a decision[ ] covered by this subpart is premature and inappropriate unless the plaintiff has *exhausted the administrative review process* set forth in this part (see 7 U.S.C. 6912(e) *and 16 U.S.C. 6515(c))*.") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 12**

Alliance provides no caselaw to support its reading of section 6515 in this context. Nor has the Court found any. With this unsettled backdrop, the Court does not decide whether section 6515 is the sole means for challengers to provide public comment and notice for categorically excluded projects. Nor does it therefore determine whether the doctrine of administrative waiver wholesale applies to categorically excluded projects. Instead, based on the *particular* facts of this case, it finds that Alliance's Fourth Claim for Relief can still be waived regardless of whether section 6515 requires public comment and notice only for projects subject to NEPA analysis and not for categorically excluded projects. That is because Alliance *was* provided notice of the USFS's intention to apply the insect and disease categorical exclusion and that the Project was located in the wildland-urban interface, Alliance *had* an opportunity to publicly comment on these and other positions, and Alliance *did* submit comments. Under bedrock principles of administrative law, these circumstances are legally significant and have consequences.

The purpose of the scoping process is to "provid[e] adequate notice and begin[ ] a meaningful dialogue with members of the public about a proposed action…." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1117 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). The Supreme Court has held that it is "incumbent upon [those] who wish to participate to structure their participation so that it is meaningful, so that it alerts the agency to [the party's] position and contentions." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 553 (1978). The Supreme Court explained:

> Indeed, administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that

**MEMORANDUM DECISION AND ORDER - 13**

      agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'

*Id.* at 553-54.[10]

As required by 16 U.S.C. § 6591b(f) and 36 C.F.R. § 220.4(e)(1), the USFS satisfied its scoping requirement by posting the nearly 50-page Scoping Notice on the Project website and circulating it to 215 organizations and individuals, including to Alliance specifically. Defs.' SOF Nos. 15-16 (Dkt. 85). The Scoping Notice stated that the Project would likely be exempt from NEPA because of HFRA's categorical exclusion, since the Project is in the wildland-urban interface. *Id*. at Nos. 18-19 (citing *Petrick*, 68 F.4th at 484). Notwithstanding the challenged application of any subsequent administrative review process under section 6515, this afforded Alliance the opportunity to put the USFS on notice of the alleged statutory violations raised in its Fourth Claim for Relief. *Id*. at No. 21; *see Hanna Flats I*, 535 F. Supp. 3d at 974 n.14.

Critically, Alliance responded to the Scoping Notice with more than 100 pages of comments. *Id.*at No. 20. These comments raised myriad objections to the Project. *Id*. (citing FS15218-322, 23039-43). But as the Ninth Circuit made clear, Alliance's comments never actually put the USFS on notice of the wildland-urban interface issue. *Id*. at Nos. 22-23 (citing *Petrick*, 68 F.4th at 489-90). Had Alliance done so, the USFS would have had the chance – at a critical early stage of the Project – to "apply its expertise, to correct its own errors, and to create a record for [judicial] review." *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1024 (9th Cir. 2007). That the USFS might have addressed the wildland-urban interface issue is not merely speculative; it considered other issues brought to its attention during the

---

    [10] That the Project here was categorically excluded from NEPA analysis and therefore proceeded without an EIS or EA (and thus, without the public comment period that attaches thereto) does not upend this conclusion. The Court sees no reason to view this objective any less robustly than when applied as part of a full NEPA analysis.

**MEMORANDUM DECISION AND ORDER - 14**

scoping phase. *See, e.g.*, Defs.' SOF Nos. 25-26 (Dkt. 85) (referencing the USFS's response to certain comments received during the scoping phase).

In this context, Alliance's opportunity but ultimate failure to put the USFS on notice of the wildland-urban interface issue is precisely the situation that the doctrine of administrative waiver is meant to address. "'As a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.'" *Petrick*, 68 F.4th at 487 (quoting *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). "And absent exceptional circumstances, failure to raise arguments before an agency, such as in comments during a public-comment process, usually waives a litigant's rights to make those arguments in court." *Id.* at 487-88 (citing *Exxon Mobil Corp. v. EPA*, 217 F.3d 1246, 1249 (9th Cir. 2000) ("Petitioners have waived their right to judicial review of these final two arguments as they were not made before the administrative agency, in the comment to the proposed rule . . . .")).

Alliance's argument that the scoping process imparts obligations on only the USFS rather than on Alliance itself is similarly unpersuasive. *See* All.'s Reply ISO MSJ at 4-6 (Dkt. 88).[11] It

---

[11] On this subject, the Court is not persuaded by Alliance's reliance on *Darby* to suggest that the Court cannot apply administrative waiver here because it would then be imposing an administrative review requirement on it that is not distinctly set forth by statute or regulation. All.'s Mem. ISO MSJ at 10-11 (Dkt. 82-1); Reply ISO MSJ at 6, 11 (Dkt. 88). *Darby* concerned the doctrine of administrative exhaustion, not administrative waiver. *See Darby*, 509 U.S. at 138 ("This case presents the question whether federal courts have the authority to require that a plaintiff *exhaust available administrative remedies before seeking judicial review* . . . .") (emphasis added); *see also Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1020 n.4 (9th Cir. 2004) ("[*Darby*] is inapposite. It simply held that an appeal to a superior agency authority is a prerequisite to judicial review only when expressly required by statute or agency rule and the administrative action is made inoperative pending that review. *It sheds no light on the application of waiver on judicial review*.") (emphasis added). Alliance seemed to originally recognize as much. *See* All.'s Mem. ISO MSJ at 2-3 (Dkt. 82-1) ("Further, the Supreme Court unequivocally holds that *courts may not impose an administrative exhaustion requirement on a plaintiff* in an APA case unless there is an explicit requirement in a statute or regulation.") (citing *Darby*, 509 U.S. at 154) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 15**

too ignores the collaborative, back-and-forth purpose of the scoping process. Critically, it also ignores that Alliance chose to fully engage in the public-comment process by relaying its extensive and specific concerns about the Project to the USFS. Once Alliance did this, the ability of its claims to proceed on judicial review must depend on the sufficiency of its earlier objections in putting the USFS on notice.

In short, the doctrine of administrative waiver applies to Alliance's Fourth Claim for Relief. Caselaw supports this settled proposition, even if it does not grapple with the legal subtleties at play here. *See, e.g.*, *All. for the Wild Rockies v. Marten*, 464 F. Supp. 3d 1169, 1176-77 (D. Mont. 2020) (applying administrative waiver to an HFRA categorical exclusion via the wildland-urban interface in a different project: "Alliance waived this claim [about the wildland-urban interface] by failing to raise it during the public comment period on the Willow Creek Project. . . . Nowhere does Alliance question whether the Tri-Country Regional Community Wildfire Protection Plan wildland-urban interface meets HFRA's statutory requirements. That challenge is waived.") (citing *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004)).[12]

Having determined that, under the facts of this particular case, Alliance provided public comment and notice regarding the Project, its Fourth Claim for Relief is subject to the doctrine of administrative waiver. Accordingly, the Court turns to whether any exception exists to its application here.

**B.     Remand Issue No. 2: Whether Any Exceptions to Administrative Waiver Apply to Alliance's Fourth Claim for Relief**

---

[12] *Marten* does not address the relevant statutory provisions – namely, sections 6515 and 6591 – that Alliance relies upon in this case. *Marten* is still significant insofar as it applies the doctrine of administrative waiver to projects categorically excluded from NEPA analysis.

**MEMORANDUM DECISION AND ORDER - 16**

Following the Ninth Circuit's invitation to "raise other waiver-specific arguments" on remand, Alliance additionally (or in the alternative) argues that the Court may re-enter summary judgment in its favor because four circumstances preclude the doctrine of administrative waiver's application here: (i) it applies only to "notice and comment rulemaking" under the Administrative Procedures Act ("APA") and, here, there was no notice and comment rulemaking involved; (ii) it does not apply to determine the scope of an agency's power to act and, here, the USFS had an independent obligation to confirm that its decision to categorically exclude the Project from NEPA analysis was proper; (iii) it does not apply when an issue is "so obvious" and, here, the USFS did not need notice from the public that it must first establish that the Project is in the wildland-urban interface before categorically excluding the Project from NEPA analysis; and (iv) it does not apply when there is an "exceptional circumstance" and, here, statute and regulation exempt categorical exclusions from administrative review. All.'s Mem. ISO MSJ at 11-15 (Dkt. 82-1). Each of these arguments comes up short.

First, Alliance assumes that, because the administrative waiver cases cited within *Petrick* address notice and comment rulemaking under the APA, the doctrine of administrative waiver in turn applies only to APA notice and comment rulemaking. *Id*. at 12-13. This assumption is incorrect. As Defendants explain, the doctrine of administrative waiver is a general principle under the APA and courts apply it broadly, often outside of notice and comment rulemaking. Defs.' Mem. ISO MSJ at 16 (Dkt. 84-1) (collecting cases). The cases cited by Defendants support application of waiver here.

Second, Alliance claims that its criticisms of the USFS's utilization of a categorical exclusion via the wildland-urban interface cannot be waived because they speak to the overall scope of the USFS's authority – something that the USFS must ensure is lawful on its own. All.'s Mem. ISO MSJ at 13 (Dkt. 82-1) (citing *Sierra Club v. Pruitt*, 293 F. Supp. 3d 1050, 1061

**MEMORANDUM DECISION AND ORDER - 17**

(N.D. Cal. 2018) ("[T]he waiver rule does not apply to preclude argument where the scope of the agency's power to act is concerned" because an agency "is separately tasked with the obligation to examine its own authority and not [act] in a way that exceeds its scope.")).  But this case is not about the USFS's authority, as was the case in *Sierra Club*.  There, the plaintiffs challenged the EPA's extension of compliance deadlines already mandated by Congress.  This squarely related to the EPA's underlying authority to act, according to the district court, which undermined the EPA's waiver argument (the plaintiffs had not previously raised the issue during the rule-making proceedings before the agency).[13]  *Id*. at 1061.  In contrast, here, there is no dispute that the USFS had the authority to apply a categorical exclusion under HFRA to the Project.  And Alliance's Fourth Claim for Relief does not challenge that authority.  Rather, it speaks only to whether the USFS adequately established wildland-urban interface compliance to support a categorical exclusion.  The doctrine of administrative waiver applies to this latter context.  *See Marten*, 464 F. Supp. 3d at 1176-77.

Third, Alliance argues that administrative waiver does not apply when "'flaws might be so obvious that there is no need for a commenter to point them out specifically in order to preserve its ability to challenge a proposed action.'"  All.'s Mem. ISO MSJ at 13-14 (Dkt. 82-1) (quoting *Pub. Citizen*, 541 U.S. at 765).  The Court acknowledges that exception in the abstract, but disagrees with Alliance's implication that the USFS's alleged shortcomings in categorically excluding the Project from NEPA analysis meet this objective standard.  They do not.  As Defendants highlight, the USFS's reliance on the Bonner County Wildfire Protection Plans to delineate the wildland-urban interface is not unusual, with other courts endorsing the practice.

---

[13] Plus, in *Sierra Club*, the district court noted how the record was "complete with comments from other stakeholders who objected to the further extension of the compliance deadlines."  *Sierra Club*, 293 F. Supp. 3d at 1060.  There is no similar circumstance here relating to the wildland-urban interface issue.

**MEMORANDUM DECISION AND ORDER - 18**

Defs.' Mem. ISO MSJ at 17-18 n.4 (Dkt. 84-1) (collecting cases, two of which involved Alliance).  Alliance does not challenge the USFS's ability to draw support from such county plans, but instead, contests the plans' ability to definitively resolve whether the Project is situated in the wildland-urban interface.  This is an argument "of degree, rather than an outright failure to address," and thus, is not self-evident.  *League of Wilderness Defenders-Blue Mountain Biodiversity Project v. Bosworth*, 383 F. Supp. 2d 1285, 1296-97 (D. Or. 2005).  Consequently, any flaw in the USFS's analysis here is not "so obvious" as to render the doctrine of administrative waiver inapplicable.

Fourth, Alliance argues that sections 6591b and 6515 create the same type of "exceptional circumstances" to administrative waiver as recognized in *Page v. Donovan*, 727 F.2d 866 (9th Cir. 1984).  All.'s Mem. ISO MSJ at 14-15 (Dkt. 82-1).  The Court disagrees.  In *Page*, the at-issue regulation created an exceptional circumstance that nullified any claim to administrative waiver: to wit, it expressly allowed review without first requiring an administrative objection.  *See Page*, 727 F.2d at 868 ("The regulations permit an aggrieved party to appeal from an adverse determination without specifying the error for which reversal is sought, and direct the Assistant Secretary, when hearing an appeal, to 'ascertain whether substantial error adversely affecting the rights of a party has occurred, regardless of whether such error is alleged by an appealing party.'") (internal citations omitted).  There is no similar statute or regulation that applies as clearly here.  As discussed earlier, sections 6591b and 6515 neither (i) upset the USFS's public notice and scoping requirements, nor (ii) expressly negate any public comment and notice obligation for Alliance.  *Supra*.  Absent the same exceptional circumstances, therefore, *Page* is distinguishable and cannot apply to foreclose administrative waiver's application here.

**MEMORANDUM DECISION AND ORDER - 19**

Absent any exceptions to the doctrine of administrative waiver's application to Alliance's Fourth Claim for Relief, the Court concludes that Alliance waived its challenge to the USFS's use of HFRA's insect and disease categorical exclusion.

## IV.  **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that: (i) Alliance's Renewed Motion for Summary Judgment (Dkt. 82) is DENIED; and (ii) Defendants' Renewed Cross-Motion for Summary Judgment (Dkt. 84) is GRANTED.  Within 14 days of this Memorandum Decision and Order, the parties shall submit a joint status report addressing the next steps, if any, in either *Hanna Flats I* and *Hanna Flats II*, including any need to supplement the existing briefing on Alliance's renewed Motion for Preliminary Injunction and/or Temporary Restraining Order in *Hanna Flats II*.  *See* Jnt. Status Rpt. at 12 (Dkt. 92).



DATED:  January 10, 2024

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**